We look forward to hearing your arguments today. Thank you, Your Honor. I always wondered what those post-argument conferences looked like, and now I know. Your Honor, Sprechweitzer from the Federal Defender's Office here representing Mr. Henderson with co-counsel Ms. Zinquanto. At this time, I'd like to reserve three minutes for rebuttal. I'll be granted. Thank you. There are several moving parts, as Your Honors are aware, in this case. So if you would indulge me for a moment, I'd like to suggest what I think is the clearest path forward. If we were to win on divisibility, the court can stop there. That's because the government, it concedes that subsections one and three do not qualify under the Elements Clause, and subsection three is not generic robbery. Now, if we were to lose on divisibility, and the court focuses just on subsection two, Mr. Henderson still wins for two reasons. First, subsection two fails under the Elements Clause because it can be committed recklessly, as confirmed by the statute itself and the Pennsylvania default mens rea provision, and second, because it can be committed without the requisite level of force, as confirmed by Harris. The second subsection two is not generic robbery, for many reasons, actually, but probably the most straightforward of which is that it lacks the from the person in presence requirement of generic robbery. The court, therefore, I would submit, need not address the issue of whether generic robbery can be committed recklessly. So I will jump into the generic offense, because the court asked several questions about that in the focus letter, but before I do that, if I may, a moment on divisibility. If I could ask you a question about that first, that argument was withdrawn before the district court. Why should it be permitted to be resurrected now? Because, Your Honor, this is an extremely important issue that affects a lot of cases. The divisibility issue was withdrawn, as Your Honor notes. However, that waiver can be excused, and I would submit that it should be here. The second is, we've got Peppers, we've got Blair, we've got a bunch of other cases that have already held its divisible, and I'm not sure that we can deviate from that. I think you can, actually, and here's why. This court has never addressed, squarely addressed, the Pennsylvania robbery statute post-Mathis. Blair, of course, was before Mathis, and that reasoning has been fairly abrogated. I think that's generally recognized. What about Peppers, though? Peppers was post-Mathis, but there were no Shepherd documents in that case, so the only thing that Peppers court said was, it's divisible between grades of robbery. That's all that, and even that's dictum, because there were no Shepherd documents. And so, when... What about McCants, which is basically the same statute, but in New Jersey? It is very similar, but divisibility is a state-by-state issue, because the question is, the ultimate standard for divisibility is, does the state law require juror unanimity? And so, in McCants, in New Jersey, the court found that either the state doesn't or the parties didn't present any evidence that the state requires unanimity, and so, therefore, the court relied on sort of a genus-species test that it established or looked to in order to find that statute divisible. But we're not bound by McCants, given the very similar language between the New Jersey robbery and the Pennsylvania robbery? Not at all, because actually, in McCants itself, it said, the court said, if we were presented with evidence that the state does not require unanimity amongst jurors, we'd come to a different result. That's right in McCants, and so, when we go to Pennsylvania, we have that evidence. We have that evidence, and that is from several different sources. First of all, the model instruction, which has been approved by the Pennsylvania Supreme Court, clearly sets out, there are two elements to robbery, a theft, or in the course of a theft, and an aggravating circumstance, and those aggravating circumstances in the context of F1 robbery, of course, are the infliction of injury, the threatened, or intentional putting in fear, or another felony. So, it's clear, two elements. And then, when we look at the cases, Payne, Payne talks about a jury that was charged under both one and two, and they were not required to be unanimous. Now, it involved, the Payne case involved a separate sentencing issue, but that's powerful evidence right there that this is how Pennsylvania judges instruct juries, and this is how the offense is viewed. And so, it's not just Payne. Proscademo, Rivera, these cases approve that model instruction. And so, when we have, when you're faced with that sort of evidence, that evidence didn't exist in McCants, for New Jersey. So, here, it's a totally different situation. In fact, you know, the only, as far as I'm aware, the only thorough judicial analysis of this is the Singleton case in the district court, post Mathis, and of course, there the court found that it was indivisible. And in addition to all these points that I just mentioned, collected many judicial documents, and Shepard documents showing that these offenses are charged together. So, the last thing I'll say about this, of course, I'll answer any questions on it as well, is we have to remember where the burden lies here. All I need to show is that this is uncertain. It's the government's burden to show they're looking for an enhancement here. This isn't a 2255 case, or even there, the burden is really on the government. But this is a case in which they're seeking a sentencing enhancement. They need to show that he was convicted under a divisible statute, and he was convicted under subsection 2. And if that's not clear, Mathis says, if that's not perfectly clear, then the statute is deemed indivisible. So, you know, I think the evidence makes it clear that this statute is indivisible, but it certainly casts doubt on the issue, such that the government can't carry its burden. So, moving on from divisibility, if the court were nonetheless to proceed and to look, focus only on subsection 2, as I said, the government runs into problems right off the bat. Let me start with the generic offense. This court... What's your definition of the generic offense of robbery? The generic offense is the taking from the person or presence of another by force. That's not my definition. That's this court's definition. Scott and McCants both held that. The government's brief, for good measure, adds the Second and Sixth Circuit cases, cases from the Second and Sixth Circuit, underscoring that that is the generic form of the offense. And that's the widely accepted version. So, right there, we know immediately that Pennsylvania is broader than that. And again, as I mentioned in my introduction, the quickest and easiest way is the person or presence requirement. That the Pennsylvania courts have made clear that subsection 2 does not require a taking from the persons or presence. That's in the Cullum case I submitted in a letter yesterday. Sorry for the late arrival, Your Honors. But it's in another case law as well. So, that presents the clearest example of overbreadth by far. So, the fact that the court, I know, asked and Judge Restrepo, you mentioned in the context of divisibility, asked about McCants, right? And so, are we bound by McCants? And we're not, and the court is not no further bound by McCants on this issue than it is on divisibility. And that's because of the basic bedrock principle of sort of how appellate courts operate. That issues lurking in the background in the record that were never brought to the attention of the court, that were never ruled upon by the court, are not deemed to have been decided. And this court... So, you're saying because McCants did not have presented to it the presence requirement, McCants' value here. So, how would this panel of three folks who are bound by our precedent write in our opinion if we were to find you were correct, that we're not bound by McCants? I think the court would do exactly what it did in Daniels. Remember, this is... Mr. Zaltzmer and I and others have been litigating these issues for many years in various contexts. And in the Pennsylvania Plyd situation, the question has come up whether that's an ACCA predicate. And this court early on said, no, it's not. And that was the Abbott case. And the argument presented there was divisibility. And then a number of years later, as creative counsel worked hard, the issue came up as to whether Pennsylvania Plyd might not be an ACCA predicate because it requires or it subsumes an attempt defense and whether that was a generic attempt. And so, in Daniels, this court addressed that issue. It didn't say we're bound by Abbott. We've already decided that Pennsylvania Plyd is an ACCA predicate. Why are you raising this argument? It just... It addressed the merits. You know, the court... If the court wants to acknowledge McCants, it certainly could. And I would suggest the way to do that would be to say that McCants held that New Jersey statute is a generic robbery insofar as it required the requisite amount of force. Because that was the issue in the case. So, that's what McCants stands for. But not insofar as there was a personal presence requirement or anything else. And of course, we would argue that the force holding in McCants doesn't apply here as well because we have different law. We have Harris and we have different Pennsylvania law. But that's how you address McCants if you feel the need to. Does Bryant, the case you sent yesterday, also stand... It includes an attempted theft? Yes. And does generic robbery, completed generic robbery, encompass attempted theft? No. So, what happened here was the model penal code came in. And Pennsylvania used to have generic robbery. It used to have common law generic robbery as defined, as I stated at the start, Scott, accepted by this court, Scott, McCants, et cetera. And then in 1972, it adopted the model penal code. And in some aspects, the model penal code continued the generic tradition. And in some instances, it deviated. And one of the instances it deviated is the taking requirement. It said, well, we're going to sort of on the front, at the beginning and at the end, it expanded the taking requirement. Actually, get rid of the taking requirement, expanded the culpability. Because it said, attempted thefts will constitute robbery. And the use of force in flight after a taking will also constitute robbery. That's what the model penal code said. Now, of course, that's not generic. Generic, as I said, requires a taking. Under the generic version, the common law version, there wasn't a taking. There just wasn't a robbery. Maybe there was something else. There was an assault. There was something. But it wasn't robbery. So, in that respect as well, the Bryant case stands for the front end of that, right? There's no taking required at all because there was an attempted theft. And in fact, the Maldonado case and the Mays case represent the, which were cited in our primary briefing, represent the end of that process where the force is not involved in the actual taking, but is involved in a flight. And so, Pennsylvania, likewise, adopted the model penal code's innovation in that respect. So, again, deviation from generic. So, I would submit that, again, the court, there's sort of all sorts of reasons that are very straightforward why Pennsylvania robbery sub two is not generic robbery. And I would suggest that there's no sense sort of getting into the bit of a quagmire as to whether generic robbery requires intent or can be committed recklessly. I see my time is up. I'd like to adjust the elements clause, if I may. I see the court has no other appointments this morning. I hope we're not going to be kept all morning. Feel free. And I'm going to see if my colleagues have some questions. Okay, great. Thank you. So, of course, we need to win under both, the enumerated clause and the elements clause. And with respect to the elements clause, again, two, as I mentioned, there's the Pennsylvania statute can be committed recklessly with respect to the first prong threatens another with. Now, the second prong intentionally puts in fear that requires intent. And so, what we're doing here, obviously, is... Let me stop you there for a minute. In the course of a theft, so how does one commit a reckless theft? How does one commit a reckless theft? As to the use of force, I can... You can actually... There's examples of this in the case law where someone goes up and says, I'm not going to hurt you. I want you to give me your money, but I'm not going to hurt you. And that person, why would I believe this guy? This guy's robbing me. And nonetheless, it is a dangerous threat is posed, which is what the language that the Pennsylvania courts used to describe prong one, and which Taylor, in the Supreme Court, U.S. Supreme Court, says indicates a non-intentional mandrea, threat posed. That person, even though they have no subjective intent to threaten, that person poses a threat in that situation. So therefore, it's not reckless from the taking. I'm here to rob you. Yes. Isn't that a threat? No, it's... Intentionals. That's... No. Well, it's a threat in the sense of it could be... In the sense that threat is un... Can be non-intentional. Like somebody could actually try to rob... Reckless. Sorry. Is it reckless? Yes. Yes, it could be reckless, but that's what Pennsylvania says through 302 is the mens rea for the threatens prong. But when you say threat posed, that suggests sort of an equation to imperiling. The example in your brief of the car fleeing in a fast and dangerous manner, threatening bystanders, sort of equates with imperils, which is... Seems very similar to poses or put someone in fear of immediate serious bodily injury. So if those are both imperil, why wouldn't we impute intentionally to the threat? I agree. Threaten is imperil, but imperil is not intent. Okay, so... Right, but if imperil is the same as putting in fear of serious bodily injury, then if those are essentially the same, if you're saying it's imperil, that's pretty much the same as putting someone in fear of. So there's an intent requirement there, intentionally putting someone in fear of immediate serious bodily injury, and they basically mean the same thing. Does that make sense for the legislature to say, you know, either you can put someone in fear of bodily injury or you can intentionally put them in fear of bodily injury? So no, that would be... That would be... Well, let me back up. At the end of your Honor's question, you inserted the word intentionally. Okay, but so the difference... Because in the statute. Right, exactly, and it needs to be there. So we have two prongs, right? We have threatens another with, or we have intentionally puts in fear of. So if you read intentionally into threatens another with, it becomes surpluses. It becomes, exactly as your Honor said, the same thing. But Pennsylvania doesn't... And again, you're sitting as Pennsylvania judges here, right? You're looking at what would Pennsylvania... How would Pennsylvania interpret this statute as the mens rea? And we know there are two things that the Pennsylvania Supreme Court will do when we know, which they reiterated recently in Harris. One is if the mens rea component of threatens is not explicit, that's the Moran case in the Pennsylvania Supreme Court. If it's not explicit, you go to 302. It's simple. But if you're... If it's not explicit, you go to 302. But if you're describing the same meaning to threatens another with as puts another in fear of serious bodily injury, of immediate serious bodily injury, I mean, if they have the same imperil meaning, wouldn't that suggest that in that type of passive imperiling, the legislature did require intent? I'm not saying they would mean the same thing only if you read intent into prong one. If you don't read intent into prong one, they mean totally different things. One is just... But a threat posed, wouldn't you say that's the same as putting someone in fear of serious bodily injury? Not intentionally putting someone in fear. Look at Taylor. Look at the Supreme Court. The Supreme Court said... I'm not asking about the intentional part. I'm asking, putting someone in fear of serious bodily injury, isn't that the same as posing a threat to them? Which is your language. A threat posed. That is the same, but it's the intentional that is important. And so when you say, is putting someone in fear the same as threatening another one? Someone else, I say, yes. But when we look at the statute, is intentionally puts in fear the same as threatening someone with? I say, no. Because the difference is... That's what I'm asking. Yeah, the difference... The government's argument is that intentionally should be imputed back. Right. And if they mean the same thing, wouldn't that make sense? It wouldn't. And they cite Larios. And what Larios says is that that general principle can apply when, to this language, threatens in reckless disregard. Okay. And so the Larios court said that, okay, well, threatens doesn't overcome that. There's a mens rea of recklessness right there. This statute is different. This is a disjunctive. So here we have clearly two prongs in the disjunctive. Either you threaten someone with, or you intentionally put them in fear. Does the language threatens another do any work for us as it did in Borden, where they focused on force against another? As in, the threat was, or the force in Borden was targeted towards another person. And from that, they made their conclusion about recklessness. And here we have language that says threatened another. Again, the threat is directed towards a particular subject. Doesn't that do some work in terms of showing this is more like the Borden situation of there must be intentionality there? Not unadorned threatened. Not unadorned threatened. If it was against language, if there was some oppositional language, remember, in Borden, it was used against another person, right? And so if you have threatened another person, and again, the Pennsylvania, how the Pennsylvania courts look at this, that's what we're doing here. The Pennsylvania courts, Hopkins, Hansley, Janet, Ouch. They all say that first prong requires that the defendant pose a risk. And Judge Chung's question is just that, if someone poses a threat, and you're supposed to be viewing this from the actor's point of view, not the victim's point of view. I think that's the point that's being made. It doesn't demonstrate intentionality. And I'm sorry, I'm not being clear, I think. Because in the Supreme Court, the easiest way to look at this, I think, is look at the Supreme Court case in Taylor, right? And they said, well, the government actually said that the word threat doesn't have to be intentional. That was the government's position there. And so the court said- The government says the same thing. Just said it a couple of weeks ago. Right. And so the court then said, okay, well, actually, right, threat can mean two things. It can mean, sorry. If you look at subsection two, it could have said, threatens with immediate serious bodily injury, which would sort of track the recklessness of inflict serious bodily injury. It could be threatens serious. But they said threaten another with. If you look at subsection three, it just says threatens immediately. There's no another with. So reading as a whole, it places a subject of the threat. Threatens another with. Yes, and so- Against another. So reading, if they meant for this to be a passive threat, wouldn't they have used the subsection three or the subsection one language where it just says threatens immediately or inflicts immediately? They would just say threatens immediate serious bodily injury. I don't think so. I think another is in there as a vestige to the whole phrase. Threatens another with or intentionally puts in fear because there's a disjunctive. I think grammatically, it makes sense to have that in there. So let me take you back to an example. But couldn't it just say threatens or intentionally puts him in fear of serious bodily injury? Well, then you have a hymn without a referent. And yeah, you could do that. So the second part has a hymn that doesn't sort of relate back to anything. But threatens or intentionally places another in fear of bodily injury. Right. And so I don't think another carries that. I don't think it carries the targeted direct sense that Your Honor suggests. But and let me give you an example maybe to show why that's the case. Go back to my benign robber who says, I'm not going to hurt you. And just posit that it's actually true. You know, I'm a pacifist, but I rob people. OK, so if that's the situation, he's still threatening another if in that sense of non-intentionality, in that sense that Taylor in the Supreme Court said, yes, OK, threatened can mean pose a risk. That can mean pose a risk. And that's exactly how the Pennsylvania courts talk about it. Like I said, Hopkins, Hanson, all these cases talk about prong one as posing a risk. So even though there's another there. It does all originate from Brown, which was specifically talking about the second part of the statute where it says intentionally puts him in fear. Brown, all that language is taken directly from Brown, which specifically was addressing intentionally placing in fear of serious bodily, immediate serious bodily injury. A lot of words to say. And then they sort of get conflated, which back to Judge Schwartz's point, if they are conflated and essentially the same thing, why wouldn't they carry the same intent? And I don't want to I don't want to repeat myself, but I think I think the answer is that what distinguishes the two prongs is intent. And so if I say if I say if I if I have a statute that says it's a crime to steal or to intentionally steal, that doesn't really make a lot of sense. But let's say it did. You'd have you'd have to as a matter of basic statutory construction, you'd have to infer that the first part of that means something different than the second part. I mean, that's again, in Pennsylvania, you know, that's actually codified, right? Statutory construction is actually codified in the number one rule in 1921. A is no surplus age. Right. And so if you have and that's no different than what we have here. Surplus age, if reading it that way, isn't another with surplus age, if you if you read it in the whole with subsections one and three? I know. Well, I think subsection one has to do with when there's actual harm. Subsection three, obviously, with the essentially felony robbery. And so there's no surplus age there. But if we were to say we're going to read threatened as intent, then the two prongs just collapse. They become the same thing. And so Pennsylvania doesn't do that. We don't we avoid that. We go to 302. And not all not all states do that, by the way. Not all states have a default provision or some states have a default provision that doesn't include recklessness. Here, Pennsylvania made a conscious choice. If it's not explicit, again, Moran, Pennsylvania Supreme Court has to be explicit. I don't see how we can argue that there's any there's anything explicit here. There isn't. It's just we're all we're talking about is can we read this in? Can we read intent into that? Doesn't threat mean that? Isn't that targeted? Pennsylvania says if it's not explicit, go to go to 302. And so that's, I think, where we are with respect to the elements clause. Any other questions? What about the quantum of force? Is is there a way to commit this by omission? Yes, but I'll say I'll earmark that for a second and say, Harris, we have a dispute. And I hear I'll be able to file a response to the en banc petition. So the dispute continues. But we have a dispute, Mr. Salzman and I, as to sort of what comes out of the Pennsylvania Supreme Court on this. They sort of picked a low hanging fruit and said aggravated assault can be committed by omission. I don't think they limited it to that. They cite the Bullock case. Don't want to get too into the weeds, for your honors. But but the point being, what what Harris stands for is that in Pennsylvania, as a matter of Pennsylvania law, serious bodily injury does not equate to force. OK, and so that applies. The exact same definition of bodily injury applies to robbery. Exact same from a textual matter, exact same statutory language. And so so that applies. Now, can it be committed by omission? We have a Pennsylvania Supreme Court case that is on point. So the sort of hypotheticals, the Duenas Alvarez, the realistic probability, that's not even in play anymore because we were to Harrisburg on this. And so but if we if we nonetheless, you know, kind of go down that road, then yes, you know, there could be a there could be a caretaker at the nursing home who is stealing from the person they're taking care of and is withholding their medication that they need or they're going to they need to take this medication at two o'clock or they're going to have adverse medical consequences. That's an omission. That's a robbery. Now, we look at ourselves and say, really, that's strange. Would that ever be prosecuted? But, you know, we have these cases, these cases come up in Bullock, which is cited by the Pennsylvania Supreme Court. There was an aggravated assault by someone calling the electric company to cut off the electricity to someone's house who was on a ventilator. If I had come in here five years ago and said, hey, this could be aggravated assault, I would probably get chuckles. But it happens. And so we look at the statutory text. And when we look at that, Harris directly applies here. And that's a second reason that that robbery is not a predicate under the Elements Clause. Thank you, Your Honor. Okay. We'll have you back in rebuttal. Thanks. Good morning, Your Honor. May I please the court. Robert Salzman on behalf of the government. First, with respect to divisibility, we believe that is settled. McCants engaged in a very careful analysis of it. There's nothing that it's an identical statute. There's nothing here that has changed. Unless there are questions on that, we believe we're appropriately focused on subsection 2 here. With regard to subsection 2, I know we have all these Byzantine questions coming from different directions. I think the simplest path is simply to say that this statute requires intent. And therefore, as McCants held with regard to the same statute in New Jersey, it satisfies both the Elements Clause and the Enumerated Clause. Now, the court, while I want to focus on the Elements Clause, it's interesting. The court helpfully asked more questions about the Enumerated Clause, where there it's important as to what is the generic offense. And the court specifically asked the question with regard to the generic offense of what about the fact that it has to be in the person or presence of another. And we received that question a couple days ago. And in researching it yesterday, it took me to a very important place. And I apologize that we did not address this in our earlier briefing. But the question takes us there. And that is the commentary to the Model Penal Code. What's very important here is that the Pennsylvania statute, like the New Jersey statute, is a copy of the Model Penal Code. It is word for word. And the same Model Penal Code was adopted in many other states to define robbery as well. This court recently held in Brasby that the Model Penal Code is pretty much the number one source for the current generic version of an offense. This court had previously said that it would lean towards the 50-state survey. And Brasby explained that that's been negated by recent Supreme Court precedent. And we look to the Model Penal Code. Even if the Model Penal Code's definition is the minority of states? That is what Brasby says can be appropriately focused on. Now, Brasby, Judge Fuentes, as always, is incredibly thorough and does the 50-state survey anyway, but says that we look first and foremost to the Model Penal Code. It is the statement in modern practice of the generic offense. And so that's where I went when I received the court's question about the personal presence. And we see very clearly that the current generic offense defined by the Model Penal Code does not anymore require persons or presence of another as part of the generic offense. But what's interesting here is that in looking at this commentary closely, which I should have done earlier, as I said, it also answers the question about intent very clearly. It confirms very clearly that what we've been saying all along is the right parts of it threatens another or intentionally places in fear. Both require intent and are not satisfied by recklessness. But do we give the commentary any weight when it wasn't adopted until 1980 and the Pennsylvania statute was enacted in 1972? So that commentary really wasn't a part of what the Pennsylvania legislator at least would have officially considered since it was the only thing that was promulgated originally was the code itself. The commentary didn't come until eight years after the passage of the statute. That is correct, Your Honor. And so the commentary is sort of a continuation of the drafts of the American Law Institute that were periodically issued that led to the Model Penal Code. And then it was all put together and then updated a bit and finalized in 1980. Pennsylvania courts have repeatedly said exactly what Your Honor has just suggested, which is that the commentary is not binding. It's never been adopted by the Pennsylvania legislature. But it is frequently referred to by Pennsylvania courts as guidance as to the meaning of what the authors of the Model Penal Code intended and what was adopted again word for word by the Pennsylvania legislature. And it's entitled to weight. And the reason the courts have given it weight is that this is a scholarly compilation. This is written by Professor Wexler and the leading law professors and practitioners of the day who wrote the Model Penal Code. And thus, it is frequently relied upon by Pennsylvania courts. And I would submit it as similar guidance to this court here. But you said of the day, which I thought was an interesting choice of words, because in one of our cases, it could be Brasby. We talked about looking at the contemporary sources. And there was even some criticism going way back to Wharton and things like that. If we look at what's contemporary, we look at what the 50 states are doing now, the Model Penal Code formulation of robbery is not the majority's formulation. What are we supposed to do with that if we're supposed to look at contemporary, i.e. now? Well, again, Brasby says the first and foremost contemporary thing to look at is the Model Penal Code. And remember, we're interpreting the sentencing guidelines. The sentencing guidelines are a contemporary document. That word robbery that's in the enumerated clause of the guidelines was not put there in 1712. These are guidelines that were written and revised as recently as 2016. If you could answer a question Judge Restrepo put to your adversary, what's your definition of generic robbery? A person or presence, right? I think the best definition of generic robbery is actually, word for word, the Pennsylvania statute, because it is the Model Penal Code. And that is, according to Brasby, the best definition. And what are we supposed to do with our precedent in Scott and McCance, where we define generic robbery as requiring a person or presence, having the person or presence requirement? What are we supposed to do with that? So saying that robbery is from the person or presence of another is a standard catch-all description that's been used for eons. But when we look at it, and McCance was not asked, it said that the New Jersey statute met it, even though when we look closely, given that New Jersey is based on the Model Penal Code, it actually doesn't literally have the person or presence requirement. Where's Scott then? Scott's more recent. Well, the answer to all of this is that the Model Penal Code's presentation that is copied in Pennsylvania and New Jersey is essentially the modern formulation with a slight tweak of the person or presence requirement. The way robbery developed from the old common law description to what we have now is what the Model Penal Code focuses on is the threat of immediate serious bodily injury. That when you have somebody who is accomplishing a theft by threatening immediate serious bodily injury, that's what elevates the crime from theft to robbery. And that is incredibly close to what the common law definition always was. And it's almost always going to be in the persons or presence of another that you're threatening to do such severe harm to somebody in order to take their property. And so this is what takes me to the commentary. It's volume two of the commentary. And if you look at page 112, it spells this out very, very clearly and says that we're going to reach those few other, even if rare, situations where you're pointing a gun at someone and you're saying, I'm going to shoot you unless you call somebody else and tell them to hand over their property to my compatriot. And thus the property is not handed over in the persons or presence, but it's exactly the same serious crime that the common law has always been aimed at that changes mere theft to robbery. Can we do that? Can this panel, in essence, modify or maybe reverse, Scott, in terms of the definition of robbery that we've been using? I think it's not modifying it to study it more closely and to say that the Model Penal Code's explanation is consistent with that general summary that has been used. What makes this the serious crime of robbery is immediately in somebody's person threatening them with serious bodily injury in order to accomplish a theft. That is so almost indistinguishable from what is that general catch-all definition that Scott and McCants and the others repeat. But if you give the commentary weight, as you suggest, to Mr. Schweitzer's point, the commentary itself states that this is a broadening of traditional robbery. Again, we are not frozen here in the 1700s. By the way, on the intent issue, if we are frozen, and we point this out in our brief, under the common law, if that's the guiding light here, under the common law, there's no mens rea requirement for force at all. Not only is recklessness sufficient, you don't need any mens rea requirement. We're not advocating that because there is a mens rea requirement as to force under the modern conception of robbery. But if we want to go back there, then we prevail for that reason. Are we frozen in 1987 when it was adopted? When 2K2.1 and 4B1.2 were enacted? I would suggest instead that if frozen is the right word, it's much more recent than that because the enumerated clause was most recently restated in 2016 and was significantly changed. I think that would be the period of time to look at. One could argue that the Sentencing Commission reinstates this and re-approves it every year that they function. But I think 2016 for sure. And by that time, this is all well settled. And I think if we do do that 50-state survey, if the court wants more briefing on this, we will see that person or presence, just like it's not mentioned in the New Jersey statute of Pennsylvania or all the other states, that we will see that that doesn't appear in the majority of statutes anymore at all. Because what all the statutes now focus on is our modern view of robbery. I'm not 100% sure of that though, right? You can't say that for certain. You've done a count and you can tell us 25 states are X and 13 states are Y. Correct. And if the court directs more briefing, in fact, we have many outstanding law students here today. A team of humans in front of us. And I think they'd be very eager to take a look at that. But even in 1980, in the commentary, the model penal code, this is page 114 of volume 2, 112 rather, is suggesting that even then, it was becoming the majority view. And certainly in the model penal code. But you just said to Judge Chunks, she should be looking at 2016. So why are we looking at 1980? Oh, because I'm saying that by now, it is even more clear, I believe. And if the court wants us to submit a briefing on that, we would be very happy to do that. But let me get back to- We've seen the Second Circuit at least do some surveys at this point. We'll get back if we think we need it. Sure. But let me get back to McCants. Before I do that, let me ask you about Counterman versus Colorado. Supreme Court just spoke. Second part of the opinion, they say threats. Threats can be reckless. What are we supposed to do with that language? Oh, absolutely. So the question in Counterman is, what does the First Amendment require? What is the threshold? You cannot have a criminal statute, we are taught by Counterman, that penalizes a threat that doesn't at least involve reckless conduct. And so I guess we did go back to the common law, as I suggested, where there was no mens rea requirement. That would not pass First Amendment muster. But that doesn't say at all how we interpret actual statutes that states have passed. So that's not informative of anything of whether this threat in this statute, in subsection 2 that we're looking at, it can be committed recklessly. It's not. Counterman himself was prosecuted under a Colorado stalking statute. And the question was, what mens rea did that require when he was shooting off all these incredibly nasty messages about somebody else? That's not what we have here. We still have to determine what is the mens rea requirement for robbery in Pennsylvania. But doesn't it at least tell us that a threat is an act, much like we said in Larios, and that there's some other thing that needs to inform us as to the intent in which that act is committed? Yes. Yes, certainly. If that informs us, then how do you respond to your colleague across the aisle's view that the word intent, there's no modifier for state of mind that precedes the actus reus of threat in the statute as written? So we've explained, and I'm wanting, I'm going to get back to the commentary for one more moment if I can. Well, we've explained that the plain language of the statute is very clear. Threatens another or intentionally places another in fear. The standard rule has always been that if mens rea is stated in one part of the statute, it's understood as applying to all parts. That's what this court said. Even if it follows the actus reus, it comes later. It modifies a different act. Yeah, exactly. We're allowed to flip it. Then how do you respond to your officer's point that does not make it surplusive? Exactly what this court said in Larios, where it was the same type of formulation. But looking at the plain language, threatens another, which the Supreme Court itself has suggested that the word threat normally connotes a statement with the intent to do harm. Threatens another, and I think it's helpful to look at the language in Borden that your Honor has referred to. Borden says against another typically means that you're taking an intentional act towards somebody. You have an object. Threatens another means an intentional act or intentionally places in fear. The commentary on this, which is at page 114, makes this explicitly clear as to what the writers of that phrase thought. Again, this is copied from the model peanut boat, and so we should at least give some credence to the people who wrote this. And they explain in explicit language that this requires intent and that recklessness is not sufficient. And they explain the reason that you have two things here, threatens another, or intentionally places in fear, is the difference between an overt statement and an implicit statement. An implicit statement, an implicit threat, can certainly be intentional. If one walks into a bank and has a stick in their pocket and is pointing it as if it's a gun, that's an intentional act. There's nothing reckless about it. It's an implicit threat because the person's not saying out loud, I'm going to shoot you. And that's what the authors of the model penal code were aiming at. And so threatens another means threatens another. And they say very clearly, we need intent here. But then we also, putting in fear, that's the implicit threat. And they add the word intentionally to reinforce it has to be intentional. So in order for you to prevail, do we have to conclude that the model penal code's definition is generic robbery? No. As I said at the outset, the easiest path here is under the elements clause. Under the elements clause, if you have an intentional threat of force, there can be no dispute. I could talk about physical force in a minute. That's a different issue. But with regard to the mens rea question, if you have an intentional threat of force, that is a crime of violence under the elements clause. Game's over. And this statute requires an intentional threat of force. Say we don't prevail on that. We think that Borden requires us to reach a conclusion that this is a threat that could be committed recklessly pursuant to section 302D, et cetera. And we have to now go to the enumerated clause to complete our analysis. Do we have to conclude that the model penal code is the definition of generic robbery? Well, no. So if you look at the model penal code, and again, you look at the commentary of the people who wrote it, they say it's intent. They say that this provision, the Pennsylvania copy, is required intent. We believe, if you look at all the states out there, that reckless threat is also sufficient. And we've cited numerous state statutes in our brief. And that therefore, under the modern formulation, recklessness should be sufficient. And therefore- But what about, I'm in enumerated land. So I've got a state of mind. I've got presence. How do we deal with presence? In order for you to prevail, if the presence is not an element, from your point of view, the only way we can reach that conclusion is based on the model penal code. No. I do think, and again, we can take a further look at it if the court wishes, I do believe the majority of states, as well as the model penal code, are now presenting robbery as Pennsylvania does, which is theft accompanied by a threat of injury. And not necessarily that one addition of the theft being from the person or presence of another. So now the easy answer, and maybe I'm sort of throwing under the bus people in other states where it's not as clear, where they haven't copied the model penal code word for word. The easiest answer is the model penal code, according to Brasby, is the best place to look for generic robbery. And that would mean that generic robbery requires intent, and it does not have a person or it's as plain as day in the plain language and in the commentary. In the commentary, just very briefly, page 114, they say the term threaten, the first part, the term threaten implies purposeful behavior. It covers explicit verbal threats designed to put the victim in fear. It is not the victim's reaction that controls, but the purposeful behavior by the actor in communicating the threat of injury. And the commentary goes on to say that recklessness is sufficient for subsection one, as we've acknowledged, which is the infliction of injury. And goes on to explain that they're requiring more for a threat because that's not as obvious as when somebody has actually been injured. They want to make sure that the person, that the perpetrator has engaged in criminal conduct. Also a point regarding 302, you know, the catch all that says you apply recklessness, that's copied from the model penal code. All of this is copied from the model penal code. And so if Brasby is right, and it's currently the law of the circuit, it means that this robbery provision qualifies under subsection two. And what do we do about McCants? About McCants, which is the identical, virtually the identical statute. Well, McCants, had this issue been squarely presented in McCants, I would be presenting or my friends in New Jersey would be presenting exactly the same argument. The outcome of the case is identical, which is another reason that McCants should be controlling here. Now, having said all that, there really is no example in Pennsylvania law of somebody recklessly issuing a threat. We've laid out many cases in our brief, the court, Pennsylvania has only discussed this provision, subsection two, as requiring intent and figured there's that case where it says it doesn't merge with, you know, reckless harm at all, because it requires a higher mens rea. The courts have read it the same way we have, and now we see entirely consistent with the commentary as well. Mr. Chauvin, a lot of those cases focus on, as Judge Chung was talking about, the second clause of the statute, not the Bratton's clause. No, we very consciously cited cases that discuss the entire statute. And in fact, this is how it's charged. It's very rare that you see a charge in Pennsylvania, the charge is only one or the other. Well, speaking of charge, I think your adversary cited some cases where the charging language in the charging instruments charged recklessness as among the states of mind. It was only in the charging instruments of the prosecutor's document, of course, and the grand jury's. Sure. I think they, over time, people have located one or two charging documents out there where a prosecutor inserted the word reckless. That's not a definition of state law. There's no statement of any court of general authority in Pennsylvania that has used the word reckless in referring to this statute. And instead, as we cite in our brief, has consistently referred to this as an intense statute. As far as the physical force issue, I don't know if the court wants me to get into that. There is no instance of this crime being committed by omission. We take serious objection, as this court knows respectfully, with the Harris and Jenkins decisions. We've presented our motion for rehearing in bank. The failing of Harris and Jenkins, as we've discussed, is that the Pennsylvania law, again, this is copied from the Model Penal Code, is that you cannot commit a crime by omission in Pennsylvania or under the Model Penal Code, except in two circumstances. One, where the statute itself literally says that omission is sufficient, not true for robbery, not true for aggravated assault. Or where it's an omission to act by a person with a duty to act. And that's the reason for aggravated assault, that starving a child, the only example anybody's come up with, qualifies as aggravated assault, because it's an omission to act by a person with a duty to act, being the parent. So Mr. Schweitzer, my friend, wants to extend this to robbery by he's got the person in the nursing home. But we're getting far afield, and we have no example in Pennsylvania of anybody being charged for robbery by engaging in omission to act by a person with a duty to act. If there were such an example, then as we explain in our end bank brief, that itself does qualify as a use of physical force under the Elements Clause. Eight circuits have unanimously held that. We hope that this court will address it. It hasn't addressed that. It did not address that in Harrison Jenkins. But that is the controlling issue, is because that's the only way, other than an overt act, that somebody can violate one of these statutes by an omission to act by a person with a duty to act. The fundamental question becomes, is that what federal law refers to as physical force? The fact that the state Supreme Court in Harris said, we don't think this is physical force, is meaningless. They don't get to define, quote, physical force. This court will define what physical force is. And so that's our answer on that. So if going to that nuance that you're pointing to, if it were sort of the respirator example given by your opponent, if it were just someone at the nursing home visiting their mom, and my respirator, you know, they're very breathless. And they said, sure, but first you have to hand over your wallet. The person hands over the wallet. They plug it in. Is that a robbery? There's no duty there. So first, the example of cutting off the electricity, if that's what your Honor's referring to. Yeah, I meshed his two jingles. That one we find just completely unpersuasive. That is the use of physical force. That's not even an omission to act. If somebody flips a switch in order to cut off electricity and kill somebody, that's the same as firing a gun or anything else. So that example, in our view, doesn't get anybody anywhere. You've come up with a better hypothetical, I believe, Your Honor, in saying that the mother is there and says, don't feed this person anymore unless they hand over their wallet. There you're getting into an example that's so ridiculous that there needs to be... I'm talking about someone without a duty. So, you know, I just happen to be in the nursing home. I don't have a duty to this poor person who's about to suffocate. And they say, please plug it in. And I say, all right, but give me your wallet. Take their wallet. Plug it in. There's no duty there. Under Pennsylvania law, that's an omission if they hand it over. So that, if you just have somebody passing by who says, I'm not going to help you unless you hand me your wallet, that's not a crime under Pennsylvania law. The only omission that is a crime, and this is in, I think it's section 302, but if not, it's right near there. The only omission that's a crime is where the statute makes it explicit, which robbery doesn't, or it's an omission by a person with a duty to act. And that, by the way, is not just in the model penal code. That goes back to the common law and the eight circuits that have ruled on this, especially in the second circuit in an in-bank decision, have very extensive discussions as to why an omission to act by a person with a duty to act has always been treated as overt action, as opposed to an omission to act by anybody else. So your example of a passerby who doesn't help has not committed a crime. They're reprehensible, but they have not committed a crime. But if they then take property, is it only a theft? That's a theft. But it hasn't, they haven't made a threat or an over action or an omission to act by a person with a duty to act, threatening immediate serious bodily injury, and thus, it is not elevated to robbery. The, so again, the straightest path here is that this requires intent. It satisfies the elements clause. It involves, certainly involves physical force in many cases. It's, McCance is one of many cases that Harrison Jenkins is inconsistent with in not accepting that a requirement of bodily injury equates to physical force under the elements clause. And so therefore, it qualifies, and it also qualifies as enumerated. If the court will indulge me for just one more moment, unless there are other questions. Do you have any other questions? Okay, go ahead. Just indulge me for one more moment, just about the categorical approach. The, the, this is absurd. I mean, the fact that, you know. So this is your moment to kind of tell us how you're feeling. Everybody, so the record is clear. That's what we're doing now. Go ahead. It's important. Thank you, Your Honor, because this court has a role to play. Judge Restrepo, of course, is a distinguished member of the Sentencing Commission and has a specific role. But it's also a plea. So I think Mr. Schweitzer might even jump up and say, me too. Well, I've made my plea to him. I had, you know, the privilege earlier this year of testifying before the Sentencing Commission as the Department of Justice's representative on this issue and to state the department's view that the Sentencing Commission should move away from the categorical approach. But many judges have spoken out on this as well. And so that's why I think it's appropriate for me to address all the members of the court as this very important issue plays out. Even facing the absurdities of the categorical approach, we, we find ourselves in reality sometimes. And Subsection 2 is one of those places. We've had to concede, absurd as it is, that many types of robbery in Pennsylvania no longer qualify as a violent crime. And Subsection 2 still prevails because it does require intent. But we should not be doing this. We should not be sitting here debating whether somebody walking through a nursing home is not going to feed somebody. We should be talking about Darren Henderson. Darren Henderson. Is it that these comments are directed to a higher authority than mid-level management you're faced here? No, no, because mid-level management here is at a pretty high level. And we acknowledge that, but we have obligations. Of course. I'm just making this one statement because I have a privilege of appearing before the court and the privilege of appearing first of many times, I hope, before Judge Chung, that I have the opportunity to say that judges can and have been speaking on this issue. There are numerous statements of appellate judges. A hundred percent. I might have said a few things. I think my friend to my right, my friend to my left will get a chance anytime, any minute now, perhaps. We're with you. We understand that there have many, there have been much commentary on the usefulness and the sometimes lack of reality of application of the categorical approach. But that is the approach that we are currently bound to apply. And we feel grateful to have two really great lawyers to help us chat through these issues. It is the approach. And thank you, Your Honor. And that's why I spent 98% of my time explaining that under the categorical approach and all these rules regarding mens rea and physical force and everything else, subsection 2 survives. But I'm hopeful that we will not be having these debates for years to come, that there will be corrections that take this away and take us back to the question of did Darren Henderson rob somebody at gunpoint, which is what he did, and then go arm himself again. Thank you very much, Your Honor. Thank you, counsel. We'll hear Your Honor above. Thank you, Your Honors. I was sitting there thinking to myself, I'm going to keep my powder dry on policy. And I'm going to keep my powder dry on Harris. And I just can't do it. I'm going to take less time, though. This case, like many other, presents the court with the opportunity to follow the ball, regardless of what the court thinks of as a policy matter. And I look forward to the court doing that. But aside from that, let me just say half of this case is talking about the elements clause. There is no conceivable. I've never seen a judge say that the elements clause doesn't trigger a categorical approach. It, by definition, does. So I've vented my spleen on that. But as to Harris, the only thing I will mention, Your Honor, to your point, Judge Chung, is on the duty question, there might have been some confusion there. My hypothetical was the nurse, a caretaker. There is a duty there. But let me take a step back. Focus on generic, because I think that's where I have the most disagreement with Mr. Zalesmer. First of all, Brasby does not somehow hold up the NPC as the one source of the generic version of a crime. In fact, the model penal code is decidedly not generic robbery. We know that because the model penal code, if we indulge the commentary, which Judge Chung, you absolutely correctly point out, is not determinative of the Pennsylvania legislature's intent here, because it didn't even exist. But more importantly, Judge Schwartz, I think the answer to your question is yes. For them to win on the enumerated defense clause, you've got to say that NPC is generic robbery. And the court can't do that, respectfully. I don't think the court can do that. Scott, McCants, those, unlike the hidden issue in McCants about presence that was never of generic Hobbs Act robbery and New Jersey statute. So that definition of generic offense is integral to those holdings. So if we look past that and say, and Mr. Zalesmer focused this court on the intent issue and looking at the model penal code, again, I don't think we even need to get there because of all of these other mismatches, presence, et cetera. But if you look at the intent language Mr. Zalesmer emphasized, that actually just proves my point, because the commentary that Mr. Zalesmer quoted says that in the 10 years after the fact opinion of Professor Wexler, threatened implies an intent. And so what does that mean? Well, let's go back to how Pennsylvania looks at implies mens reas. If it's not explicit, Moran, Pennsylvania Supreme Court, you go to 302. So the model penal code commentary itself says that there's no explicit mens rea requirement. The best we can do is scrounge through the commentary after the fact and say, maybe there's an implied one. And in Pennsylvania, if you're faced with an implied intent that is not there, you go to 302. So the commentary gets the government nowhere on intent, nor is it supportive of the government's suggestion that the real difference between prong one and prong two under subsection two is the implicitness. One has to be a verbal threat, but prong two covers implicit threats. The case law does not bear that out. The cases talk about hidden guns, pointed guns, brandished, whatever, as threats, not as some sort of implicit threat to do something or aggressive behavior. They call that a threat. So this notion that implicit and explicit is the distinction between prong one and prong two is just not borne out in the case law. The real distinction is intent. And for this court, the answer I would submit is easy. You should do what the Pennsylvania Supreme Court would do, which is to go to 302. Thank you. Thank you so much. We're going to ask counsel to split the cost of a transcript for today's argument, if that's okay. So if you'll just coordinate with the court crier before we conclude, or before you leave the courtroom, rather. The court will take the matter under advisement. The arguments were super helpful. The briefs were very helpful. We thank you, and I'm so glad that the new admittees and all these folks got to see both of you in action. Thank you. So thank you both. Thank you.